# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>**JOSUE BAEZ,** )<br>        **Plaintiff,** )<br> )<br>   **v.** )<br> )<br> )<br> )<br>**JOANNE DUGGAN, JEFFREY NOTARO, and** )<br>**PAUL SILVESTER, JR.,** )<br>        **Defendants.** )<br>_____) | **CIVIL ACTION**<br>**NO. 17-40109-TSH** |

## MEMORANDUM OF DECISION
### April 8, 2020

**HILLMAN, D.J.**

## Background

Josue Baez ("Baez" or "Plaintiff") has filed a federal civil rights claim against Sergeant Joanne Duggan ("Sgt. Duggan"), Officer Jeffrey Notaro ("Officer Notaro"), and Officer Jeffrey Silvester ("Officer Silvester" and together with Sgt. Duggan and Officer Notaro, "Defendants") of the Clinton Police Department ("CPD") under 42 U.S.C. §1983 alleging that Defendants violated his Fourth Amendment rights to be free from an unlawful search by conducting a body cavity search of his person while he was detained in a cell at the CPD, and his Fifth Amendment rights by failing to give him the warnings required under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602 (1966).[1]  This Memorandum of Decision addresses Defendants' Motion for Summary

---

[1] Plaintiff is proceeding pro se and therefore, the Court will construe his claims liberally. Plaintiff originally named the CPD as a defendant. However, the CPD was dismissed after review of his Complaint pursuant to the screening provisions of 28 U.S.C. § 1915.

Judgment As A Matter Of Law (Docket No. 68). For the reasons set forth below, that motion is *granted*.

## Standard of Review

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case." *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences". *Id.* (citation to quoted case omitted).

"'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.""" *Id.* (citation to quoted case omitted).

## Facts

### Local Rule 56.1; Defendants' Facts Deemed Admitted

On January 22, 2020, the Court held a status conference at which Plaintiff and counsel for the Defendants appeared. At that time, the Defendants informed the Court that they intended to file a motion for summary judgment. The Court set February 28, 2020 as the date for filing any such motion and set a hearing date of April 14, 2020. Defendants filed their motion on February 28, 2020. Accordingly, Plaintiff's response was due by March 20, 2020. *See* LR, D.Mass. 56.1 (opposition to motion for summary judgment shall be filed within 21 days after the motion is served). Plaintiff has not filed an opposition to Defendants' motion.

This Court's Local Rules provide that a motion for summary judgment:

> shall include a concise statement of the material facts of record as to which there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation … A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation …. Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.

Although Baez is proceeding pro se, he is required to comply with this Court's procedural rules. Therefore, he was required to file a Rule 56.1 statement setting forth the facts which he contends are in dispute. Since he did not do so, the Court must deem the Defendants' statement of material facts admitted by him. *See Strahan v. Diodati*, 755 F. Supp. 2d 318, 324

3

(D. Mass. 2010)(where pro se plaintiff failed to submit required concise statement of material facts as to which there exists genuine issue to be tried pursuant to L.R., 56.1, material facts set forth in defendants' motion for summary judgment are deemed admitted).

<u>Facts Relevant to Baez's Arrest</u>

According to Baez, on August 21, 2016, he was walking down the street near the Clinton Motor Inn when Luis Resto ("Resto") parked his car and told him to get in the passenger seat. Resto told Baez he had an accident with a person at the Motor Inn and they had called the police. On that date, Sgt. Duggan, Officer Notaro, and Officer Silvester were all employed by the CPD and were on patrol duty between the hours of 2:00 p.m. and 10:00 p.m. At some point during their shift, they and other officers were dispatched to the Clinton Motor Inn in response to a 911 call for a disturbance involving a firearm. While they were on route to the Clinton Motor Inn, dispatch advised all three Defendants that the suspects had left the scene in a blue Chevy Cruz with a Florida license plate.

Officer Silvester located the vehicle at Main and Union Streets in Clinton and initiated a vehicle stop near O'Malley's Gas Station. Sgt. Duggan and Officer Notaro arrived almost immediately to assist Officer Silvester. Baez had Suboxone in his pocket in a sandwich bag and admits he secreted the sandwich bag in his anus when he saw a police officer approaching. The officers told Resto to turn off the car and instructed Baez and Resto to raise their hands and not move until the officers opened the door. While keeping their weapons pointed at Resto and Baez, the officers opened the door and ordered them to exit and get on the ground. Officer Notaro then patted Baez down, asking him twice where the gun was located. He put Baez's hands behind his back, cuffed him and patted him down.

The vehicle was searched, and a small wooden bat was found in the front passenger seat. Resto was searched and wads of cash were found in his pockets. After the pat frisks were completed, Sgt. Duggan asked Officer Silvester to go to the Clinton Motor Inn and check the scene. At the Clinton Motor Inn, Officer Silvester spoke with the victims who gave verbal statements which included descriptions of two male suspects. The victims described how the men had forced themselves into their room and called them "snitches."   The victims indicated to Officer Silvester that the men may have had a firearm based on their movements. Officer Silvester returned to the vehicle stop location and shared with Sgt. Duggan and Officer Notaro what he had learned, including that the victims' description matched Baez and Resto. Officers Notaro and Silvester arrested Baez and brought him to the CPD. Baez was to be charged with felony assault with a dangerous weapon and transported to court.

Facts Relevant to Baez being Strip Searched

Sgt. Duggan remained on scene to inventory the car. She discovered a small silver cup with black burnt residue and multiple used needles in the vehicle. Based on Sgt. Duggan's training, experience, and expertise, the items discovered in the vehicle appeared to be drug paraphernalia typical of opiate usage. Sgt. Duggan reported what she had discovered to Officers Notaro and Silvester.

At the police station Baez was booked, advised of his rights, and placed in a holding cell. Baez was left in the holding cell for approximately 10 minutes until Officers Notaro and Silvester came in and uncuffed him. Once Baez's handcuffs were removed, Officer Silvester instructed him to take off his clothes.   Baez asked Officers Silvester and Notaro why he had been instructed to remove his clothes, and they responded they were investigating. Baez removed

his outer clothes and shoes but stayed in his underwear. The officers then instructed him to take off his boxers and Baez understood that they were looking for a gun. Baez was instructed to grab his genitals, turn around so that his back was facing the officers, and to bend over. When Baez bent over, something was clearly visible between his buttocks' muscle but not within his body cavity. Officer Notaro put on sterile gloves, plucked the item from between Baez's buttocks and confiscated it. The officers then closed the holding cell and left Baez in there. The item they removed was a sandwich bag which contained the label "Suboxone."

At no time did Officers Notaro or Silvester enter the body cavity of Baez during the visual strip search. The search occurred in the privacy of the holding cell away from the general public or other prisoners, and was conducted in front of Officers Notaro and Silvester, both males.  Sgt. Duggan was not present at the station during the search of Baez and did not strip search any of the suspects that day.

Based on their training, experience, and expertise as a police officer, Officers Notaro and Silvester had reasonable suspicion to believe Josue Baez may have been concealing a firearm or drugs based on the statements made by the victims at the Clinton Motor Inn and the drug paraphernalia found in the vehicle. The situation required a thorough search to ensure officer and public safety based on the knowledge held at the time.

<u>**Discussion**</u>

In order to establish a claim under Section 1983, Baez must establish that a person acting under the color of law denied him a right secured by the constitution or by federal law. There is no question that the Defendants were acting under the color of law at the time of Baez's arrest and the alleged illegal search and therefore, the issue before the Court is whether any Defendant

violated his constitutional rights. Baez alleges that the individual Defendants violated his rights under the Fourth Amendment by conducting an illegal body cavity search of his person at the CPD and his Fifth Amendment rights by failing to give him his *Miranda* warnings. The Defendants asserts that they are entitled to summary judgment on Baez's Section 1983 claims as a matter of law because there is no evidence which would support a finding that their conduct was unreasonable under the circumstances or that they otherwise violated his rights.

## Failure to Read Baez his *Miranda Rights*

"[A] mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda rule*." *United States v. Patane*, 542 U.S. 630, 641, 124 S.Ct. 2620 (2004). "Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial." *Id.* For this reason, the suppression of unwarned statements, "is a complete and sufficient remedy for any perceived *Miranda* violation." *Id.* at 641-42, 124 S.Ct. 2620 (internal quotation and citation omitted). Baez has not alleged that any statements he made to the police were admitted into evidence against him at a trial relating to the events underlying his claim. In any event, he has no remedy under Section 1983 for any alleged *Miranda* violation in this action. The Defendants' motion for summary judgment is granted on this claim.

## Baez's Illegal Search Claim

The Fourth Amendment generally:

'prohibits only those searches that are unreasonable,' requiring a court to 'consider whether the circumstances and the public's need for information justify the particular intrusion into the searched individual's privacy.' [However, police must have a] 'particularly robust justification,' [for conducting nonconsensual body cavity searches.] '[I]n determining the reasonableness of an intrusion into a suspect's bodily integrity, a court must consider the strength of the suspicion driving the search, the potential harm to the suspect's health and dignity posed by the search, and the prosecution's need for the evidence sought,' and may also

consider 'the availability vel non of a less invasive means of conducting the search.' Manual rectal examinations pose a particular harm to an individual; the First Circuit has described such searches as 'demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission.'

*Dyer v. City of Bos.*, No. 17-CV-11452-DJC, 2018 WL 1513568, at *3 (D. Mass. Mar. 27, 2018)(internal citations and citation to quoted case omitted)(second alteration in original).

As to Sgt. Duggan, the undisputed facts establish she was not present at the CPD at the time of the search, and therefore, there is not a scintilla of evidence that would support a claim against her for violation of Baez's Fourth Amendment right to be free from an illegal strip search. Summary judgment shall enter for Sgt. Duggan. As to Officers Notaro and Silvester, the undisputed evidence is that they were aware that Baez or Resto may have a firearm which was not located during the search of Resto's car, and that Sgt. Duggan had found drug paraphernalia in her search of Resto's vehicle. Thus, Officers Notaro and Silvester had a reasonable belief that contraband may be secreted on Baez's person. The search was conducted in the holding cell, Baez was given an opportunity to cover his front and turn away from the male officers and asked to bend over. The sandwich bag containing the suboxone was readily visible and Officer Notaro put on gloves and removed it from between Baez's buttocks without entering his anal cavity. Under the circumstances, the search, was necessary and conducted as non-invasively as possible. I find that the undisputed facts establish that Defendants did not violate Baez's Fourth Amendment rights as a matter of law. For the reasons set forth above, the Defendants' motion for summary judgment is granted.

## **Conclusion**

Defendants' Motion for Summary Judgment As A Matter Of Law (Docket No. 68) is ***granted***.


*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**